Good morning, ladies and gentlemen. Our first case for argument this morning is in the matter of Cook Medical. Ms. Reitmeyer. Good morning, Your Honors. May it please the Court. My name is Jennifer Reitmeyer. I represent the two plaintiffs' appellants in this matter, Teresa Sykes and Shirley Parton, each of whom have an implantable IVC filter in their body. Medical imaging, specifically CT scans, shows that the prongs of their IVC filters have punctured outside the walls of the vena cava and into the surrounding tissue. For Ms. Sykes, the perforation is by nearly a centimeter, with four prongs outside of the wall. For Ms. Parton, the perforation is by almost half a centimeter, with one prong outside of the wall. Each of these women has filed a product liability claim against the manufacturer of their filters, who I'll call the Cook defendants, appallees here today. These actions were filed into the multi-district litigation currently pending before the Southern District of Indiana. Ms. Sykes and Ms. Parton then both produced a court-ordered plaintiff profile sheet and a categorization form that the district court uses for bellwether screening purposes. The Cook defendants then filed the motion at issue here, which was originally a motion for judgment on the pleadings, arguing that the categories... What are the damages? So the damages are the injury that they have suffered. What injury? They're asymptomatic. So the injury is that the prongs have poked through, punctured the wall of the IVC, this causes internal bleeding, it causes clotting. Did it? For your two clients, did it? Is there evidence of that in the record? There's evidence from our expert statement, Dr. Murky, that this is what occurs in the case of a perforation, and we've documented perforations in the case of both of these plaintiffs. But did your expert say that's what happened to these particular plaintiffs? I know he said this is a consequence or can happen, but did he actually say that happened with these plaintiffs? That is how I read the declaration, because he states that this is what occurs in cases of perforation, and these are two cases of perforation. Before we get too far down the merits, I have a question about the amount and controversy in the case. This is an MDL, but the claims are not aggravated for purposes of amount and controversy. I think you would agree with that. Correct. So because we're here on federal jurisdiction, each plaintiff has to have alleged damages in good faith in excess of $75,000. How do you get there? Let's start with Ms. Parton first, who is asymptomatic, hasn't alleged any kind of future damages, hasn't alleged pain and suffering. How can we say that her claim would involve over $75,000? So there's the injury that's been suffered within her body as the starting point. Within that, you can include projected costs of future care. But there's nothing in the record about future care or future costs. I agree in a product liability case and in a defective medical device case that that can be relevant, but I didn't see anything about Ms. Parton needing future care. I didn't see any, and please correct me if I missed this in the record, I didn't see anything in the record suggesting that the device was going to have to be removed. Nobody came in and opined for her health. She's going to have to have this come out. She didn't allege any kind of pain and suffering or future damages. How do we get to over $75,000 with respect to her? So first of all, this issue has not been challenged. You're correct, and if we need to, we'll ask for a supplemental briefing and give you the obligation to make sure that we have subject matter jurisdiction. Yeah, and so to us, the fact of having suffered an injury within the human body does give rise to that, including the attendant emotional distress that she has also suffered. How did that? In terms of measuring a damages to get to the $75,000. What emotional distress if she was asymptomatic? If she didn't know, I'm curious as to how maybe the CAT scan, I don't want you to get into private health information if you don't need to, but she had a CAT scan. Was it for the purpose of determining whether these prongs have stuck through the vein or for some other health purpose and then she discovered it? You see, how did she suffer emotional distress? So that comes from knowing that the filter is now outside the walls of the vena cava and the fact that this is a condition known to be progressive. We've cited a medical journal article showing that it's progressive. It also has the emotional distress from complicating her present decision-making when it comes to her health. It's more difficult to remove- Where was that ever raised below though? And where, this goes back to the question earlier, to complicate her decision-making. I didn't see anything in there from any expert or any assertion by either of these plaintiffs that they had to have the filter taken out. So neither client has had the filter removed. We did present below- But not even that somebody has told them they should have it removed. You could have something defective and with no consequences, they're asymptomatic, that stays in and you live your life without any issue. So your argument would have more merit if you had produced something below that a doctor had told her this has to come out. What we do have is a medical journal article explaining, finding that removal is more complicated once there is a perforation. I don't doubt that, but you're missing the first step, that you have to get it removed. I didn't see any evidence from anybody saying that once this should have it removed. So that's not in the record. What we do have is these factors that these two women now know they have a filter that has failed within their body, punctured outside, and is now in the surrounding tissue. And we'll respectfully posit that this does impact their mental state and cause distress knowing that this is- Does the record show or is there an allegation what percentage of people who have this kind of puncture end up having this device removed? No, that's not in the record. Does the record show what percentage of people with this kind of puncture, currently asymptomatic, develop medical symptoms in the future? The closest that we have there is the Dowell article from 2015 discussing the progressive nature of perforations. That doesn't tell you the answer to my question. So I take it the answer is no. There's absolutely nothing in the record addressing that question. Correct. Okay, I'll turn to the law then. Both sides and the district court started from the proposition that- So I'm sorry, before you get to the merits, just I want to follow up on my amount in controversy. Is it your argument that you get to the $75,000 merely by the puncturing of the filter in the IBC? We do think that's the case because you are also entitled to look at the attendant emotional distress, you know, projected future medical costs, and yes, we do. We think that the perforation itself does. Is there any evidence of potential future medical costs of either of your clients or did they allege that they were going to have any? What we have is the has perforated. That is a more expensive, more difficult, complex procedure once you get into that. Okay, thank you. So turning to the law, when you look at Texas and Kentucky, the applicable state law here, the first principles are simply that injury is required. The district court and both sides then turned to the restatement for guidance. The restatement is clear that any level of physical impairment is sufficient for an injury. No minimum amount of physical injury is required and the comments provide the example of a scratch to the bumper of a car, which is sufficient for injury. This means that the standard applied by the district court requiring a practical impact is inconsistent with the third restatement of torts. A scratch to the bumper of a car does not impact the practical ability of a car to function. It still drives from point A to point B. The Cook defendants have been more focused on the second restatement of torts, arguing that there's a difference between the two. But the third restatement addresses this. It says that, expressly says that the second restatement doesn't require that there's any minimum amount of physical harm and gives the example of an exercise class that makes a student's muscle firmer and skin tanned, noting that that is not detrimental injury. That is not what happened here. Internal bleeding is detrimental. Having to clot to prevent death is detrimental. Scarring of the largest vein in the body is detrimental. I must say I don't understand the assertion that all internal bleeding is detrimental. Everybody has nosebleeds. We don't view that as a source of damage. Almost everybody has bleeding in the lungs almost all of the time. Well, in this case, it's not a natural function of the human body to have a metal prong poke into a vein and cause bleeding. We know that. But you asserted that the injury is that all internal bleeding is detrimental. And I don't see any reason to believe that's true. Now, maybe there's some reasoning behind your assertion. But the assertion itself needs support. The FDA has evaluated that and declared that perforation is an adverse event, the risk of which counsels in favor of early removal. I wish you'd address my question. Has the FDA declared that all internal bleeding is detrimental? No, no. But that's what you said. That's why I said, what's the support for that proposition? So, I apologize if that was taken as a broader statement. What I meant to say is that bleeding caused by a metal prong, a foreign body through a vein is detrimental to a person. Because what it does is then expose the collagen, requiring fibroblast activation, clotting, and you end up with a scar on the IVC. And Dr. Markey, our expert, has a statement that that impairs the function of the IVC. I'm not getting it. Maybe I'm just thinking of too big a universe. If you have a blood test, somebody will stick a needle into a vein. There will be internal bleeding. When the needle is inserted, it classifies that as an injury leading to damages. I'm just puzzled by this assertion that any internal bleeding is a problem that will be redressed by the legal system and damages. I don't get it. You need more support for that kind of proposition. Well, what the third restatement says about this is that any amount of harm is legally sufficient, which is the question here. Is the legal sufficiency of the proof that we've offered? And it further explains that the concern about low-value cases is addressed by the fact that counsel don't bring them. There's no incentive to go and do that where the damages are too minimal. I'm trying narrowly here to address the legal question because the district court dismissed on the ground that we couldn't establish an injury as a matter of law on these facts. And under the legal standard for injury, we think that that's incorrect reversible error. I'll turn to toxic tort cases briefly as both the district court and the Cook defendants rely on them. In particular, the district court pulled language out of a case called Sondag versus Numo Apex Corporation. It's from Illinois, applying Illinois law, addressing asbestos. And it discussed that there the allegation was that there was impact on some small number of air sacs within the lung. The court discussed that people have hundreds of millions of air sacs within the lungs. And for that reason, an additional practical detriment would be required. But that's not the case here where we have the injury to the IVC itself. I respectfully suggest that Ms. Sykes and Ms. Parton have set forth uncontroverted medical facts from which a jury could find an actionable injury in satisfaction of the standard for summary judgment. I ask the court to overturn the district court's opinion and remand for further proceedings. Thank you. Thank you. Mr. Paul. Good morning and may it please the court. Plaintiffs' lives are totally unaffected in any practical way. Mr. Paul, we need to begin with Judge St. Eve's question. Yes, sir. To be candid, we have had the same question, but we have chosen up to this point to accept their allegations. You know you have an ethical obligation to address jurisdictional issues which you're aware, not to ignore them because it's convenient. No, we're not ignoring them because they are inconvenient. We believe that they have alleged in good faith that these caused them damages that exceed the amount in controversy. How do you get the good faith here? How do you get to over $75,000? I look at their, I know these were direct filings, I look at their short form complaint that just incorporates allegations from the master complaint. The master complaint has a very general exceed $75,000 allegation and has in other places injuries listed that don't apply to them. Right. So, and I know it's not all that difficult to get to over $75,000 and we do rely on good faith, but I have concerns with this massive MDL and all of these smaller cases that are asymptomatic coming in and riding the federal subject matter jurisdiction and don't meet diversity because they're not in excess of $75,000. So, I know that hasn't been the focus. Correct. But can you give me some comfort on how they get to over $75,000 in good faith? Well, the concern is fair and our belief that they have pled in good faith the amount in controversy is based simply on our experience in medical device cases that typically where you have a device that is in the body that in some way affected the body even if that is not a cognizable injury, that that leads to a good faith claim, a colorable claim that the amount in controversy is at least $75,000. Does the complaint in either of these two cases explain how it gets over $75,000? The briefs certainly don't. The briefs say the amount of controversy exceeds $75,000, period. Not the smallest effort to explain how or why. There are no individual allegations as to either of these two cases. There is a master complaint and then a short form complaint that lays out the basis of their claim which is the perforation. Right. And the short form complaint doesn't address the $75,000 other than to incorporate the one sentence paragraph from the master complaint that says the amount of controversy exceeds $75,000. Right. But a lot of the, in fact all of the injuries in the master complaint are not ones that have been alleged here. Correct. That's my concern. Correct. And your concern is fair and again our basis for believing that they have pled the amount in controversy in good faith is based on our experience in medical device cases where you have a device implanted in the body. It is, the perforation although is not a cognizable injury is considered an adverse event and so we believed based on that claim alone that they meet the amount in controversy. That's different of course from the amount. Do you feel the same way for symptomatic versus asymptomatic people because I have the same concerns here regarding amount in controversy but the master complaint says that there are all these cognizable injuries such as loss of consortium this and that but a lot of that relates to symptomatic patients. So asymptomatic folks that had no idea that they had this condition, no problems whatsoever. I don't know how you can extrapolate those particular damages to asymptomatic individuals just filling out checking boxes and adopting the damages claims in the master complaint which clearly don't apply to them in every instance. So what about all these other plaintiffs that have just presented the short form complaint with no additional information regarding the damages to satisfy the amount in controversy? Well, again I can't elaborate beyond what I've already said that our belief that they've pled a good faith allegation of $75,000 or more is based on our experience and based on the fact that they have a medical device in their body that has perforated which is an adverse event. The good faith basis is a low bar and that's why we've chosen to accept it. I confess that we have had the same question but again we have based on our experience chosen to accept their allegation as a good faith allegation. Now that all said, we can believe that their claims are not worth anything because they have not pled a cognizable injury. They have no adverse symptoms. They have no physical impairment and they've had their filters for about 10 years now. Have they not- I'm sorry Mr. Paul, just one more question please before we get to the merits. One more question on the jurisdictional amount. So our case law says that if a record is developed on the amount in that if we are legally certain that the recovery would be less than the jurisdictional amount based on what was included in the complaint that there's no jurisdiction. So I'm asking you given what's in the record is there legal certainty that the recovery here based on what they alleged again not based on your argument that there's no injury but based on what they alleged their injuries were is there legal certainty that the recovery will be less than $75,000? No, no but my understanding and I could be wrong please correct me if I am. My understanding is the legal certainty test comes into play when a plaintiff is put to their proof to determine- When there's some record development which- Yes. Which I know the amount in controversy wasn't developed but the injury certainly was developed so we know we may not have a dollar amount put on in injury but we know we know what she's able to claim as asymptomatic. Correct. That's a fair point. If you take the existing record and look at the issue of subject matter jurisdiction through the lens of the claim you cannot say to a legal certainty that this claim these claims are worth $75,000. Again we have to go back to what was alleged so if there's no injury on the merits that doesn't count. Correct. We have to go back to how- I understand but what I'm saying is if we hypothetically had put them to their proof and this was the evidence that they came forward to attempt to meet the legal certainty test. So it seems that this is a challenge again for some of these big MDL cases. Well look to be quite candid about this plaintiffs have basically admitted and I think this is from a November 2021 status conference that the only reason these sorts of cases are filed is because of the existence of an MDL. The undoubted hope- They wouldn't file these cases if they had to be standalone cases. The hope is that they will be wrapped up into some sort of global settlement where their individual cases will never be scrutinized on merits and that is- courts have recognized that that is a real problem with MDLs and it is certainly a problem here. Although there are two issues there. The MDL is meant to aggregate claims to make them worthwhile to bring that are meritorious claims. So I think there's a being able to handle a lot of smaller dollar value claims in an aggregated way versus these claims that may not be meritorious and are tagging along. Right and well class actions are typically you know formed for the purpose of dealing with smaller dollar claims but you know we're dealing with an MDL they're not generally- It's not a class action. That's exactly right. That's exactly right These low value or no value cases get incorporated into the MDL and again the hope is they will get some sort of settlement out of them without their cases ever being scrutinized. We chose to challenge these two cases on the merits and we believe because they are asymptomatic and have no physical impairment they have no cognizable injury. Had they not gotten their CT scans they wouldn't even know that their filters had perforated their IVCs. Is there anything in the record about why they got these CT scans? Was it for the purpose of the lawsuit or was there a medical- There's nothing in the record to that effect. And to your earlier question to my friend on the other side about what sort of evidence is there as to treatment there is no evidence that these plaintiffs need these filters removed. There is no evidence that they need any treatment that is different than any other filter patient would need. So there is nothing along those lines. In fact according to their own medical journal evidence, quote, the reported incidence of symptomatic IVC perforation is low compared with the rate of observed cable wall perforation identified by CT. That's at appendix 168. Asymptomatic perforation is the norm. It's not unusual. For there to be a cognizable injury you have to have more than a mere change or alteration in the body and that's because as these cases demonstrate physical changes may be of absolute no consequence to a person. So for there to be cognizable physical harm there has to be a change for the worse and it has to be for the worse in a practical sense not just a medical technical sense. A plaintiff has to show that there is an internal change that has a detrimental effect on their lived experience, that it is a physical impairment, such as by causing adverse symptoms like pain or some other practical detrimental effect like difficulty breathing. Here the change is utterly of no practical consequence to the plaintiffs. And one way to see this and to address... What about just having this foreign body in their bodies or something that is malfunctioned in their bodies and the emotional trouble with that? In order to make out a claim for mental anguish, excuse me, you have to have an underlying cognizable physical injury and that's what's lacking here. That's borne out by the Capitol holding case and the Temple Inland case. And to go to Judge Kirsch's question about what are your damages? Well one way to see that they are not harmed in any practical way is to imagine these cases in front of a jury. How would plaintiffs go about explaining their damages? They have no adverse symptoms. They have no physical impairment. So the only basis upon which to request damages would be the threat or fear that they might suffer adverse symptoms or impairment in the future and that alone is not a cognizable injury. So is it your position that the statute of limitations hasn't begun to run yet for these plaintiffs? No, it hasn't begun to run until they suffer a cognizable injury. Because they shouldn't be boxed in with oh you know you don't have an injury so it's premature to bring it but aha you knew from that CT scan. We can't have it both ways. We can't have it both ways which is one of the problems with their argument. If their argument is accepted, the statute of limitations will begin to run as soon as they discover they have a perforation which means one of two things. For plaintiffs who know about a perforation yet, their claims could be barred and it will not matter if they suffer serious harm later because of the rule against claim splitting. For those who know about a perforation but are still within the statute of limitations, they would have to sue whether they're symptomatic or not and thereby risk going uncompensated or undercompensated if they don't experience serious harm during the course of the lawsuit. That does not seem like a desirable outcome if I were on the other side. Mr. Paul, these filters, when these filters stick through the veins, do they have to be removed in some cases? Think about like a pacemaker that every once in a while you have to change the battery, right? These filters, when they put in, are they there forever? They are designed to be either permanent or removable and there is no evidence in the record that simply because they perforate they have to be removed. In fact, as I said earlier, there's no evidence that these specific plaintiffs. I just think about when a doctor goes into a vein with a guide wire or something like that to perform a routine surgery, often the guide wire will get stuck through the vein and the doctor just pulls it back a little bit and the vein kind of heals itself. Is that an injury? No. I mean, I don't think there's any argument that that's an injury. Now, the guide wire eventually comes out after the procedure, but I guess from the standpoint of the filters never have to come out because they had perforated the vein, that was my question. Yeah, and in fact, I would be surprised if they would have to get them out at this point given that they have already been in their bodies for 10 years now. But again, there's no evidence that they do in fact need them out and related to your question. I'd like to ask you the same question I asked your opponent. Are there data in this record about the percentage of filters that perforate that are in fact removed? No, there is not. If there's nothing there, there's nothing there. There is record evidence about how often filters perforate, and it's not uncommon, but there is no evidence addressing your specific question. May I ask one more question? Of course. Is it your position that any time there's an asymmetric perforation, there's no injury, or that just in this case based on these particular facts, there's no injury? If there is no practical detrimental effect on a person's lived experience, such as by causing symptoms, there is no cognizable injury. So I think the answer to your question is no, there is no cognizable injury when the person is asymptomatic or they have not otherwise experienced some sort of detrimental effect. Thank you. Thank you, Mr. Paul. Anything further, Ms. Rethmeyer? You have 15 seconds, but I'll extend that to one entire minute. So I'll briefly note that counsel said that they believe we have alleged in good faith the jurisdictional requirement, because I want to remind your honors that this motion at issue was originally filed as a motion for judgment on the pleadings. So there's a tremendous inconsistency to state that they believe we've alleged it in good faith, but those allegations are what was later insufficient as a cognizable injury. Beyond that, I want to note as to the November 2021 status conference, we were not there. We had no part in that statement. And in fact, we routinely turn away potential clients who have IVC filters but do not have any findings that there has been any sort of adverse event or injury. And finally, briefly as to the single action rule, I don't believe it's as simple as stating that. It would really be in plaintiff's best interest to add a practical impact requirement on. These devices often fail. Thank you, Counselor. Thank you. The court directs both sides to file supplemental memoranda addressing the existence or nonexistence of federal subject matter jurisdiction. Those memos are due in 14 days. Counsel may wish to refer to 28 U.S.C. section 1653 in drafting those memos. The case will be taken under advisement after the memos have been received.